[Nos. B132150, B133182. Second Dist., Div. Four. Mar. 14, 2002.]

MARIE MIGLIORE, Plaintiff and Appellant, v.
MID-CENTURY INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Lisa S. Kantor for Plaintiff and Appellant.

Shernoff, Bidart & Darras, William M. Shernoff, Michael J. Bidart, Jeffrey Isaac Ehrlick; Quisenberry & Kabateck, Brian S. Kabateck, Heather M.

Mason and Suzanne Havens Beckman for Consumer Attorneys of California et al. as Amici Curiae on behalf of Plaintiff and Appellant.

Cooper, Kardaras & Kelleher, Michael Branconier; Horvitz & Levy, Lisa Perrochet, Andrea M. Gauthier and Holly R. Paul for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—Appellant, Marie Migliore, appeals from a judgment in favor of respondent Mid-Century Insurance Company based on the statute of limitations. We conclude the trial court did not err and we affirm.

### STATEMENT OF FACTS

At the time of the Northridge earthquake, January 17, 1994, appellant was employed by her father's business, a Farmer's Insurance agency doing business as Migliore Insurance Agency. Appellant was head of the automobile insurance department. Appellant's residence was insured through a Farmer's entity, Fire Insurance Exchange, but she had no earthquake coverage.

Despite the fact appellant had no earthquake coverage, on January 25, 1994, she filed a claim with Fire Insurance Exchange for damage to her residence resulting from the Northridge earthquake. Vic Miller, an independent adjuster employed by CEFCO National Claims, inspected her home and concluded that it had "little or no damage" to it. Appellant's claim was denied on March 9 on the basis she had no earthquake coverage.

Appellant also had her home inspected by an independent appraiser, Vincent Natoli, in connection with refinancing, and by an agent of the Federal Emergency Management Agency. Each found no significant damage from the Northridge earthquake to the residence.

Appellant applied for earthquake coverage through her father's agency in early March. On March 9, her father inspected the residence, concluded there was no earthquake damage from the Northridge earthquake, and issued a binder for earthquake coverage issued by respondent.

Two aftershocks from the Northridge earthquake struck on March 20, 1994. Shortly after these aftershocks, appellant noticed cracks inside and outside her house, her roof began leaking and she began experiencing

plumbing problems. In late April or early May appellant and her father inspected the house and determined appellant should not make a claim because the damage appeared to be less than her deductible limit of $12,000.

In November 1994, appellant noticed more damage to her residence, which she attributed to the aftershocks. She filed a claim with respondent, which was acknowledged on March 8, 1995. Dennis Brown of the Catastrophe Center was appointed by respondent to evaluate the claim. He first confirmed that appellant's father had done a preinsurance inspection which resulted in a finding of no preexisting damage. Accepting appellant's contention that all damage resulted from the aftershocks, he inspected the property and adjusted the claim for a total of $26,155.01. After subtracting the deductible limit of $12,000, on April 18, 1995, respondent issued a check to appellant in the amount of $14,155.01.

After receipt of the check, appellant called Brown and told him that she believed his adjustment was low because it did not include repair of a hump in a cement slab in her kitchen, cracks in the cement slab and tile, damage to the foundation of the house, and other miscellaneous damage she attributed to the aftershocks. In May, Brown agreed to reopen the claim and retained engineer Lawrence Otsubo of Procter Consulting Group to inspect the property.

Otsubo inspected the property on May 26, 1995, and issued a report two days later in which he concluded that most of the damage appellant attributed to the aftershocks either preexisted the Northridge earthquake or was caused by it. Otsubo's report was sent to appellant on June 9. Appellant disputed the findings of Otsubo's report with Brown in a memo she sent that same date. Brown wrote a follow-up memo to the file on June 15 concluding that appellant had received adequate payment of the claim given the fact that he had attributed all damage he had seen to the aftershocks despite the findings of Otsubo that most of the damage preexisted earthquake coverage purchased by appellant. The memo suggested that a letter be sent to appellant and her agent to this effect. Brown closed his file on June 16, 1995.

On July 6, 1995, Nancy Kleinrok, branch manager of the Catastrophe Center, prepared a letter to appellant stating that no further payment would be made on the claim. Because of the significance of this letter to the outcome, we quote it here verbatim:

"Thank you for your cooperation in presenting the above referenced loss. We assure you that it has received our careful consideration. The inspection of your property for damages due to the March 20, 1994 earthquake has been

completed. Our records indicate the following payments have been made to you. Coverage A & B - Dwelling and Separate Structures for $14,155.01. This dollar amount is based upon the estimate completed by your adjuster, Dennis Brown.

"At this time we would like to address some coverage issues that have been brought to our attention regarding damages to your home that pre-existed the March 20, 1994 earthquake; and in particular damage (hump) to your kitchen floors, concrete floor slab cracks and appreciable damages due to aftershocks.

"Regarding your pre-existing damages, we have obtained an engineering report concerning earthquake damages to your residence. This engineering report is from the Proctor Consulting Group, dated May 28, 1995. This report revealed pre-existing damage (hump) to your kitchen floors.

"The Proctor Consulting Group Report States:

" 'The kitchen floor had a hump in the floor in front of the sink area and the ceramic tiles were cracked on the right side in the east/west direction about 5 feet from the back wall of the building, and it appeared that the concrete slab was also cracked and went across the dining room and bed-room, where a 1/4" wide crack was observed at the wall beneath the vinyl tiles that were carpeted and continue through to the right side of the house.

" 'The hump in the kitchen floor pre-existed the Northridge earthquake and existed prior to installation of the floor tiles, since there were no cracks in the grout or tiles observed at the hump and grout along the cabinet base did not crack.'

"Based on the above engineering report, we are unable to extend any further compensation for damage (hump) to your kitchen floor as this is unrelated to the March 20, 1994 Northridge earthquake aftershock.

"In regards to the issue of the concrete floor slab cracks, the engineering reports contain information relevant to this issue.

"The Proctor Consulting Group Report states:

" 'The long concrete driveway in the backyard was cracked across inter-mittently down the driveway and then with severe moderate 1/8" wide cracks with slight differential off-sets near the front of garage.

" 'The back patio slab had a slight crack across the middle in back of the dining room in the north/south direction. " 'The concrete floor slab cracks

were caused as a result of the Northridge earthquake, and they were exacerbated by the March 20, 1994 aftershock and cracked through the ceramic floor tiles in the kitchen. The cracked slab through the dining room was observed by the insured when the carpeting was removed to install the wood flooring in November 1994.

" 'The concrete slab cracks are recommended to be epoxy injected and the cracked kitchen floor tiles removed and replaced.

" 'The concrete driveway and patio cracks appeared to have occurred as a result of the Northridge earthquake, however, they were exacerbated by the March 20, 1994 aftershock and expanded. The cracked concrete slab cracks are recommended to be sawcut along the closest control joints, removed, and replaced with 4" thick concrete, reinforced with 6x6 by 10x10 wire mesh. The patio stamp concrete cracks are recommended to be epoxy injected, since the cracks would appear similar to the ridges on the rough slate surface finish.'

"In regards to the issue of appreciable damage due to the aftershock of March 20, 1994 we have concluded based on your adjuster's property evaluation and the Proctor Consulting Group Report, that there is appreciable damage to your property due to the aftershock. Unfortunately, however, we are unable to extend coverage to you for any pre-existing damages or losses caused by pre-existing damages.

"Finally our records indicate that the damage to your property resulting from the Northridge earthquake [*sic*] has been paid for.

"This decision is based upon the information available to us at this time. If you have any other information which you believe may effect [*sic*] Mid-Century Insurance Company's decision on your claim, please let us know so we can consider it. Call us at the Emergency Claim Center at (800) 593-5736.

"If you feel we have made a mistake in evaluating your claim, you may want to have the California Department of Insurance review it. You can contact the Department of Insurance by telephone at (800) 927-4357. Or you may write to them at:

"California Department of Insurance
Consumer Services Division
300 South Spring Street
Los Angeles, California 90013

"In closing we want you to be aware that Mid-Century Insurance Company is not waiving any of the terms, conditions or provisions of the insurance policy issued to you. Fire Insurance Exchange expressly reserves its right to assert those terms, conditions or provisions."

Brown spoke with appellant that same day and told her that a letter was being prepared to be sent to her and that nothing more would be paid on the claim. Appellant apparently received the letter on July 11, 1995.

On July 13, 1995, a supplemental report was submitted by Otsubo to Brown, which confirmed the information from Otsubo's prior report.

On July 17, 1995, appellant received a telephone call from Bob Davis of the Pasadena Farmers Earthquake Center, who told appellant that no further payment would be made on her claim.

Appellant's father contacted Farmers to dispute the findings in the Otsubo report and the letter denying further payment. Michael T. Hickey, divisional claims manager for Farmers Insurance Group, responded to the inquiry with a letter to appellant on July 31, 1995. He reasserted respondent's position that no further payment would be made on the claim. He closed with the following: "If you should have new information which would affect our decision on this portion of your claim, please forward it to my attention and we will consider it."

After receiving the letter from Hickey, appellant telephoned his office but Hickey was not available, and she received no return call from him. She followed up by attempting to contact Brown by facsimile in October 1995, but received no response.

In September 1996, appellant wrote to Hickey. She referenced the findings of no damage by Farmer's representative Vic Miller shortly after the Northridge earthquake and challenged the findings of Otsubo, that the unpaid for portion of the damage either preexisted the Northridge earthquake or resulted from it. On October 7, 1996, Kleinrok responded in writing. As pertinent, the letter states:

"Additionally, your undated letter was received by our office on September 25, 1996, approximately 15 months after the closure of your file. To date you have not provided any new information as requested by our July 6, 1995 letter. We have enclosed a copy of that letter for your review. Please be advised that your file remains closed at this time. [¶] . . . [¶]

"Please be advised that your Earthquake Policy for Homeowners contains language regarding 'Suit Against Us.' The specific policy language is as follows:

" 'CONDITIONS

"*Suit Against Us.* We may not be sued unless there has been full compliance with all the terms of this policy. Suit on or arising out [o]f this policy must be brought within one year after the loss occurs.' "

On December 23, 1996, public adjuster Michael A. Vaughan wrote to respondent on behalf of appellant requesting access to the claims file. Kleinrok responded that the file remained closed and again quoted from the "suits against us" provision within the policy.

On January 21, 1997, Vaughan submitted an estimate of additional costs totaling $191,000 to repair appellant's residence. Kleinrok wrote to him that insufficient information was provided in this submission to determine if this "supplemental claim" was timely. She agreed to a follow-up investigation, assigned to John Sisneros, for determination whether the renewed claim had been timely made.

On February 24, 1997, Sisneros submitted to respondent a document titled "Coverage Request For Late Reported Supplemental." He noted that appellant had no earthquake coverage for the Northridge earthquake but had requested an inspection by the carrier, and Miller, the carrier's agent, had found no resulting damage. He recommended: "If coverage is extended recommend contacting [an] engineer to triangulate the dwelling ground accelerations, comparing 3/20/94 to 1/17/94. [¶] Also would recommend reviewing the 1/17/94 file to see what the adjuster reported and what his photos show."

On March 28, 1997, Kleinrok sent a joint letter to appellant and Vaughan. As pertinent, the letter states: "[Respondent] has determined that it has paid all benefits which can reasonably be considered to be aftershock damages. In addition, we note that the request to reopen the claim is barred by the one year period of limitations contained in the policy of earthquake insurance. We therefore regret to inform you that [respondent] is denying your claim for further insurance benefits."

Appellant filed suit on September 8, 1997. A first amended complaint was filed on December 29, 1997, alleging the following causes of action: breach of contract; breach of the implied covenant of good faith and fair dealing; negligence; fraud; and intentional infliction of emotional distress.[1] During the course of pretrial litigation the court denied a motion for summary judgment brought by respondent based on the statute of limitations.

---

[1]The fraud claim was not submitted to the jury and no issue is raised on appeal relating to this cause of action.

Trial proceeded before a jury and the matter was submitted with a special verdict. Questions 19 through 21 addressed the issue of the statute of limitations. Those questions and the jury's answers are as follows:

**"QUESTION No. 19:**

"When was there appreciable damage to [appellant's] property caused by the March 20, 1994 earthquake aftershock?

"Answer by stating the month, day, and year.

"Answer: 11/xx/94

"Please go to Question No. 20.

**"QUESTION No. 20:**

"When was [respondent] first notified of a claim for damage to [appellant's] property caused by the March 20, 1994 earthquake aftershock?

"Answer by stating the month, day, and year.

"Answer: 3/8/95

"Please go to Question No. 21.

**"QUESTION No. 21:**

"When did [respondent] first formally advise [appellant] that it would not pay any more for the damage to her property caused by the March 20, 1994 earthquake aftershock?

"Answer by stating the month, day, and year.

"Answer: 7/6/95"

Appellant presented a proposed judgment to be entered based upon the special verdict. Respondent objected to the proposed judgment and presented its own proposed judgment in its favor based the jury's answers to questions 19-21 from which it drew the legal conclusion that the one-year statute of limitations barred all claims. The matter was argued and submitted to the court, which signed and entered respondent's proposed judgment on March 15, 1999.

The last two paragraphs of the judgment state: "It appearing that by reason of those special verdicts, [respondent] is entitled to judgment against

[appellant], [¶] Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that [appellant] take nothing by her complaint from [respondent] and that [respondent] have and recover from [appellant] costs and disbursements in the sum of $ _____."

Judgment on the special verdict was entered on March 15, 1999. Notice of entry of judgment was served on March 18, 1999.

Respondent filed a cost bill which was opposed by appellant. On April 21, 1999, the trial court struck portions of respondent's cost bill and granted the remainder in the amount of $19,083.26.

Appellant filed a notice of motion for judgment notwithstanding the verdict or in the alternative for a new trial. Both motions were denied by minute order on April 28, 1999. A formal order denying the motion for new trial was entered on April 28, 1999. A formal order denying the motion for judgment notwithstanding the verdict was entered on June 1, 1999.

On May 13, 1999, appellant filed a notice of appeal "from the judgment in favor of [respondent] entered on March 15, 1999 and denial of the motion for judgment notwithstanding the verdict entered on March 15, 1999."

On June 17, 1999, appellant filed a notice of appeal "from the order awarding costs in favor of [respondent] entered on April 21, 1999."

The first appeal was designated by us as No. B132150. The second appeal was designated by us as No. B133182. We ordered the appeals consolidated and all further filings to be done under case No. B132150.

DISCUSSION

*The One-Year Statute of Limitations*

Based on the answers to questions 19-21, the trial court ordered judgment entered in favor of respondent on its statute of limitation defense. Appellant raises a number of arguments why the trial court erred on this issue.

■ Pursuant to the requirements of Insurance Code section 2071, the policy of insurance issued to appellant contained the following clause: "We may not be sued unless there has been full compliance with all the terms of this policy. Suit on or arising out of this policy must be brought within one year after the loss occurs." The actual language of section 2071 ends with the phrase "after inception of the loss" rather than "after the loss occurs," as

in the policy at issue here. We conclude this is a distinction without a legal difference. (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 680, fn. 2 [274 Cal.Rptr. 387, 798 P.2d 1230] (*Prudential-LMI*).)

In *Prudential-LMI*, the Supreme Court concluded that the term "inception of the loss" should be "defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Prudential-LMI, supra,* 51 Cal.3d at p. 678.) Here, the jury determined "inception of the loss" occurred in November 1994, which triggered the running of the one-year statute. (Answer to question No. 19.) Appellant has no quarrel with this finding.

■ The statute is tolled from the time the insured gives notice of the claim to the insurance company until "the time the insurer formally denies the claim in writing." (*Prudential-LMI, supra,* 51 Cal.3d at p. 678; see also *Prieto v. State Farm Fire & Casualty Co.* (1990) 225 Cal.App.3d 1188, 1195 [275 Cal.Rptr. 362].) This has been construed to mean "unequivocal" denial in writing. (*Aliberti v. Allstate Ins. Co.* (1999) 74 Cal.App.4th 138, 147-148 [87 Cal.Rptr.2d 645].) ■ Here, the court applied the answers to questions Nos. 20 and 21, respectively, as the date of notice of the claim given by appellant to respondent and the date respondent gave unequivocal written denial of the claim to appellant. Appellant takes issue with the responses to each of these questions.

Citing *Aliberti*, appellant argues that question No. 21 presented the wrong inquiry to the jury. Question No. 21 reads: "When did [respondent] first *formally advise* [appellant] that it would not pay any more for the damage to her property caused by the March 20, 1994 earthquake aftershock?" (Italics added.) Appellant argues that the question should have required the jury to determine when respondent "unequivocally denied" the claim rather than when it "first formally advise[d]" appellant it would pay no more on the claim. We conclude that neither the jury nor the court was misled by the language of the question.

The jury was instructed on this issue as follows: "The one year suit provision starts on the date of the inception of the loss and is tolled from the time the insured gives notice to the insurer until there is an *unequivocal denial* of the claim by the insurer." (Italics added.) During argument, counsel for appellant impressed upon the jurors the importance of this legal concept: "Now, why do I say that? Unequivocal denial? This is the law. This is the law. It has to be unequivocal denial. . . ." He urged the jury to find the date of the unequivocal written denial to be the letter from Kleinrok dated March

28, 1997: "It was not until this letter of 3-28-97 that the plaintiff, perhaps not being a rocket scientist, but the plaintiff is not dumb. She recognized that she was out of luck." Counsel for respondent argued the jury should select the Kleinrok letter of July 6, 1995, as the date of unequivocal written denial: "Ladies and gentlemen, in the letter of July the 6th she was advised 'no more money.' . . . Certainly by July the 17th when she writes out, 'must get own engineer.' I would submit that is the date that applies for the date when she was advised, the July the 6th letter."

The jury chose the date argued by respondent's counsel. Suit was not filed until September 8, 1997, more than two years beyond the date determined by the jury when the tolling of the one-year statute terminated.

■ Appellant argues, as a matter of law, that the letter of July 6, 1995, cannot be construed as an unequivocal denial. She argues that the words *deny* or *denied* are not used in the letter and that the letter "suggests" that the claim remains open because appellant was "invited" to submit further information for consideration. Specifically, she references the following paragraph: "This decision is based upon the information available to us at this time. If you have any other information which you believe may effect [*sic*] Mid-Century Insurance Company's decision on your claim, please let us know so we can consider it. Call us at the Emergency Claim Center at (800) 593-5736." She also points out that after this letter respondent received a supplemental report from Mr. Otsubo to "make sure [it] had a full understanding of what the engineer was saying."

Neither the fact that respondent invited further input from appellant or that she obtained a supplemental report is conclusive of the determination whether the letter of July 6, 1995, may be determined an unequivocal denial. Rather, this evidence suggests that respondent was willing to reconsider its denial upon receipt of further pertinent information. A statement of willingness to reconsider does not render a denial equivocal. (*Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 147-148 [73 Cal.Rptr.2d 546].) Nor does the failure to use the words deny or denial render a denial equivocal. (*Id.* at p. 147.) The letter states that no further benefits will be provided beyond those previously paid. This is unequivocal language that no further payment on the claim would be made.

Appellant contends that the court erred in failing to admit a denial letter from respondent to appellant for the claim she made immediately after the Northridge earthquake. At footnote 15 of her opening brief, appellant suggests that this letter would have been helpful to compare to the letter of July 6, 1995, because it clearly stated: "[W]e cannot compensate you for your

loss and must respectfully deny your claim in its entirety." We see no significant distinction between the two letters except for the fact that the letter of July 6, 1995, reflects that respondent did provide coverage for the aftershock claims. It then stated that respondent would not pay any further benefits on the claim.

Appellant also contends that the trial court erred in precluding appellant's expert, Keith Charleston, from testifying about "the operation of the Suit Against Us provision." The only legal reference cited to support this contention is Evidence Code section 350, which states: "No evidence is admissible except relevant evidence." No further analysis or citation to authority is offered to explain why expert evidence was appropriate or should have been allowed on this issue. We conclude appellant has waived the issue. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216 [188 Cal.Rptr. 115, 655 P.2d 317].)

Citing *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260 [84 Cal.Rptr.2d 552] (*Spray, Gould*), appellant argues that failure of the letter of July 6, 1995, to notify appellant of the one-year statute contained within the "suits against us" clause precludes its operation as an unequivocal denial. At best, *Spray, Gould* establishes that failure to mention the one-year statute may give rise to an estoppel to rely on the statute of limitation.[2] No case has established that inclusion of this information in a denial letter is necessary to qualify the letter as an "unequivocal" denial, and we decline to do so.

■ Appellant argues that she alleged an "estoppel" theory in her complaint by pleading that respondent "never provided [appellant] with adequate and proper notice of denial of her claim for benefits." This language, by itself, is insufficient to allege an estoppel theory. At best, it places in issue the concept of tolling discussed above.

" ' "Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ' [Citation.]" (*Spray, Gould, supra*, 71 Cal.App.4th at p. 1268.) No such argument was advanced in the trial court, thus waiving the issue for appeal. (*Green v. Travelers Indemnity*

---

[2]*Neufeld v. Balboa Ins. Co.* (2000) 84 Cal.App.4th 759 [101 Cal.Rptr.2d 151], cited by appellant in her reply brief follows the logic of *Spray, Gould* and also concludes that in an appropriate case an estoppel for failure to cite the one-year statute may be appropriate.

*Co.* (1986) 185 Cal.App.3d 544, 550 [230 Cal.Rptr. 13].) Nor does the evidence support such a theory. Instead, the evidence establishes that at all times appellant protested the amount paid on her claim and respondent's determination not to provide further coverage.[3]

■ In a related argument, appellant also takes issue with the answer of the jury to question No. 20. That question inquires: "When was [respondent] first notified of a claim for damage to [appellant's] property caused by the March 20, 1994 earthquake aftershock?" Pointing to the language of the policy which requires prompt notice of a claim "to us *or our agent*" (italics added), she argues that the uncontroverted evidence establishes she reported the claim to her father's agency in November 1994, not the date of March 8, 1995, as the jury answered.

There are two problems with the argument. The first is that only four months would be added to the tolling period, not a sufficient amount of time to bring the filing date within the one-year statute. The second is that the evidence is not uncontroverted and presented a factual issue for the jury to decide. If there is substantial evidence to support the finding of the jury, including reasonable inferences to be drawn from the evidence, we must accept their determination. (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 544 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158], overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298]; *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633 [29 Cal.Rptr.2d 191].)

It is true that at trial appellant testified that she gave notice to her father's agency in November 1994. But in her deposition, read to the jury, appellant testified that she first notified respondent either in January or February 1995, when she contacted the Catastrophe Center. Also in evidence was a document titled "Report of Loss to Property" from the Catastrophe Center which contains the notation: "Date Reported 3/8/95." The jury was entitled to disregard appellant's trial testimony, draw the inference that she was mistaken regarding the months stated at her deposition, and accept the date referenced in this document as the date appellant first gave notice to respondent of her claim.

We conclude that the jury was adequately instructed on the issue of unequivocal denial, counsel provided appropriate argument and guidance on the legal theory, and that the jury was not misled by the language of the questions presented to it. We disagree with appellant's argument that the

---

[3]For this reason, the recent Supreme Court case of *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142 [113 Cal.Rptr.2d 70, 33 P.3d 487], is not applicable.

letter of July 6, 1995 is not sufficient to constitute an unequivocal denial of the claim. It follows that the trial court did not err in applying the findings to the law when entering judgment in favor of respondent on this defense.

Appellant presents no argument that any other statute of limitations applies under the circumstances presented. ■ Issues not raised in the briefs will not be addressed on appeal. (*Tiernan v. Trustees of Cal. State University & Colleges, supra,* 33 Cal.3d at p. 216.) Thus, we need not reach most of the other substantive issues addressed by appellant.[4]

*Code of Civil Procedure Section 340.9*[5]

Section 340.9, enacted in 2000, provides for revival of claims against insurers for damage resulting from the Northridge earthquake which became barred as a result of the statute of limitations. The statute provides as follows:

"(a) Notwithstanding any other provision of law or contract, any insurance claim for damages *arising out of the Northridge earthquake of 1994* which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage.

"(b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period.

"(c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section.

"(d) This section shall not apply to either of the following:

"(1) Any claim that has been liquidated to finality in any court of competent jurisdiction prior to the effective date of this section.

---

[4]I.e., the issues of causation, inconsistent special verdict findings regarding breach of contract and negligence, failure to instruct on intentional infliction of emotional distress, instructing on bad faith, various evidentiary issues not previously discussed, appellant's claim that the damages awarded are inadequate, and her challenge to the cost award.

[5]All further references will be to the Code of Civil Procedure unless otherwise noted.

"(2) Any written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement." (Italics added.)

This statute was not enacted until after this action had been tried and after appellant's opening brief had been filed. In her reply brief, appellant addressed section 340.9, without analysis, and concluded that it should be applied to revive her claim.

Respondent sought permission to file a supplemental brief in response to appellant's brief mention of the new statute, which we granted. Amicus curiae briefs have also been filed. Primarily, the parties address issues of constitutionality and whether section 340.9 applies to all causes of action or only contract claims. Each of the substantive issues raised by respondent for nonapplication of section 340.9, except one discussed *post*, has been addressed in *Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049 [111 Cal.Rptr.2d 268] or *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247 [109 Cal.Rptr.2d 611], and was rejected. We see no need to reprise the arguments here.

In a letter brief dated September 13, 2001, respondent first addressed the issue of whether, on its face, section 340.9 is applicable: "As an initial point, we note that, even though two Divisions of this court have now addressed section 340.9, that section does not apply to this case because the necessary premise of [appellant's] claim is that the damage for which she seeks policy benefits was caused not by the January 17 Northridge earthquake, but by a subsequent earthquake on March 20, 1994. It is undisputed that [appellant] had no earthquake coverage at the time of the Northridge earthquake, having purchased her policy after the earthquake. Consequently, section 340.9, on its face, does not apply to [appellant's] claim."

Appellant responded by letter dated October 2, 2001. She argues that this issue was waived by respondent when it failed to raise it in the supplemental brief filed in response to appellant's reply brief. But, she states: "if this Court is inclined to entertain this issue, [appellant] must be afforded the opportunity to address this issue as required by *Government Code* section 68081. . . ."

On November 20, 2001, we sent a letter pursuant to Government Code section 68081 and requested further letter briefing "limited to the following issue: [¶] Given that appellant was not insured for earthquake coverage on the date of the Northridge earthquake, January 17, 1994, and that her claims

do not arise from damage resulting from that event, is section 340.9 applicable at all?" The parties have now fully briefed the issue with additional letter briefs.

■ "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

■ Section 340.9 is a special statute designed for a specific need perceived by the Legislature. We reviewed the legislative history in *Hellinger v. Farmers Group, Inc.*, *supra*, 91 Cal.App.4th at page 1058: "The history of Senate Bill No. 1899 is replete with indications of its statutory purpose. The following excerpt from the legislative record is illustrative: 'The author introduced this bill to bring needed relief to the victims of the Northridge earthquake. He states that the one-year statute of limitations contained in Insurance Code Section 2071 has unfairly barred victims from being compensated for their losses because many were tragically misled about the extent of damage suffered as a result of the earthquake. [¶] . . . [¶] News accounts have asserted that many of the quake victims have yet to receive full and fair compensation from their insurance companies to cover the costs incurred as a result of the quake. Many victims, the accounts state, have received only partial settlements for their earthquake claims, and others have received no compensation at all, having been improperly told that the damage they suffered was below policy deductibles. In subsequent years, families have discovered damage that either was ignored or missed by the original claims adjuster, yet some insurers, according to these news accounts, have stonewalled claims, leaving homes, condominiums and apartment buildings in shambles and homeowners without any recourse. [¶] Reflecting this apparent plethora of horror stories faced by many victims of the Northridge earthquake, state Senate leaders recently released market survey reports conducted by the Department of Insurance which reportedly demonstrate that several of the nation's largest insurance companies mishandled hundreds of claims following the Northridge earthquake. The market surveys concluded that the surveyed companies had repeatedly lowballed claims, failed to inform policyholders of their benefits and forced

many claimants to sue to get full payment. According to the <u>Los Angeles Times</u>, an analysis of the reports conducted by a consumer watchdog group found that one of the companies failed to properly explain benefits or misled policyholders in over a third of the 825 claims files reviewed in the report. (Ellis, Virginia, "Reports on Quake Claims Made Public," <u>Times</u>, June 13, 2000, p. A1). [¶] According to the author, this bill seeks to provide these individuals, who, he asserts, were victimized twice (once by the earthquake and a second time by their insurance companies) with a reasonable "second chance" to seek redress for their damages.' (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended July 6, 2000, pp. 1-2.)" (Fn. omitted.)

By its express terms, the statute applies to claims "arising out of the Northridge earthquake of 1994." It does not reference damage resulting from aftershocks of the Northridge earthquake. Nor does the history refer to claims made and rejected for damages resulting from other earthquakes, whether aftershocks of the Northridge earthquake or otherwise. By the plain terms of the statute and the legislative history, it appears that the Legislature intended to revive claims for damages resulting from the Northridge earthquake of January 17, 1994, not claims arising solely out of aftershocks of the Northridge earthquake.[6]

This interpretation is supported by knowledge that when section 340.9 was passed the Legislature knew how to enact statutes relating to the Northridge earthquake which also applied to aftershocks of that earthquake and subsequent earthquakes. Revenue and Taxation Code section 17207, subdivision (a)(15), originally enacted as subdivision (a)(13) in 1996 states: "(a) An excess disaster loss, as defined in subdivision (c), shall be carried to other taxable years as provided in subdivision (b), with respect to losses resulting from any of the following disasters: [¶] . . . [¶] (15) Any loss sustained as a result of the earthquake, aftershocks, or any other related casualty that occurred in the Counties of Los Angeles, Orange, and Ventura on or after January 17, 1994." Insurance Code section 10089.70, originally enacted in 1995 and amended in 1996, states: "The department shall establish a program for the mediation of the disputes between insured complainants and insurers arising out of the Northridge earthquake of 1994 or any subsequent earthquake. . . ."

We conclude that section 340.9 does not apply to revive appellant's claims.

---

[6]Interpreting this section in connection with *follow-up claims* resulting from aftershocks of the Northridge earthquake where the insured was covered for and suffered damage from the Northridge earthquake may present a different situation from that presented here. But appellant was not covered when the Northridge earthquake struck and her claims do not arise from that event.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

Vogel (C. S.), P. J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 12, 2002.