[No. B177188. Second Dist., Div. Seven. Nov. 28, 2005.]

JOSE AROCHO et al., Plaintiffs and Appellants, v.
CALIFORNIA FAIR PLAN INSURANCE COMPANY, Defendant and
Respondent.

## Counsel

Jeffrey D. Diamond for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Richard B. Wolf and Gerard A. Lafond, Jr., for Defendant and Respondent.

## Opinion

**JOHNSON, J.—** ■ Plaintiffs Jose and Maria Arocho appeal from a judgment in favor of defendant California Fair Plan Insurance Company (Fair Plan). The Arochos contend the superior court misinterpreted Code of Civil Procedure[1] section 340.9, the Northridge earthquake revival statute, which only applied "to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage." The Arochos contacted their broker, James Stovall of Kosmos Insurance Agency, about earthquake damages shortly after the Northridge earthquake occurred. The court concluded Stovall was not a representative of the Fair Plan for the purposes of the revival statute. We reverse.

### FACTS AND PROCEEDINGS BELOW

On January 17, 1994, two properties owned by the Arochos (the Properties) were insured by the Fair Plan, including earthquake coverage. The Arochos purchased the insurance through their broker James Stovall. The Arochos alleged the Northridge earthquake caused extensive damage to the Properties.

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

The Arochos first contacted Stovall within a few days after the earthquake. Stovall advised them that unless the Properties were in "rubbles," the Arochos should effect their own repairs. During the conversation, the Arochos asked Stovall to have someone come out and inspect the Properties. No one ever came out. The Arochos again contacted Stovall, who again advised the Arochos they would need to make their own repairs, which they did as best they could.

Pursuant to section 340.9, on December 31, 2001, the Arochos filed a complaint against the Fair Plan asserting causes of action for breach of insurance contract and breach of the covenant of good faith and fair dealing. The Fair Plan was served on March 12, 2002.

The Fair Plan moved for summary judgment on the ground the Arochos were not eligible to benefit from section 340.9 because they had failed to comply with the contact requirement of that statute. The Fair Plan adduced evidence Stovall was the Arochos' broker and, even though he was a producer for the Fair Plan, producers were not authorized to act for the Fair Plan. Stovall had not advised the Fair Plan of the Arochos' damages, and the Arochos, relying on Stovall, had not contacted the Fair Plan directly prior to January 1, 2000.

The Fair Plan adduced a document entitled "Producers Manual, Property Insurance Division, California Fair Plan Association" (Producers Manual), which governed Stovall's dealings with the Fair Plan. The court agreed with the Fair Plan that Stovall was not a representative of the Fair Plan and granted summary judgment in its favor.

The Arochos filed a timely notice of appeal from the subsequently entered judgment.

## DISCUSSION

"On appeal from a summary judgment, we independently examine the facts and determine their effect as a matter of law."[2] " 'It is the duty of an appellate court to make the final determination from the undisputed facts and the applicable principles of law. [citation.]' [Citation.] Thus, we interpret the challenged statute de novo as a matter of law."[3]

---

[2] *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 76 [115 Cal.Rptr.2d 3].

[3] *Bialo v. Western Mutual Ins. Co.*, *supra*, 95 Cal.App.4th at pages 76–77.

Appellants contend that in order to fulfill the objectives of the Legislature in enacting section 340.9, Stovall must be deemed a representative of the Fair Plan for purposes of the contact requirement because the Fair Plan does not utilize agents. Appellants further contend that under the principles of statutory construction, the term "representative" must be interpreted according to its plain meaning, and, if the Legislature had intended the insurer's representative to be an actual agent, it would have said so.

Section 340.9, subdivision (a) provides: "Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage."[4]

The primary purpose of the contact requirement would appear to be to prevent the submission of recently manufactured claims.

"Section 340.9 is a special statute designed for a specific need perceived by the Legislature. . . . 'The history of Senate Bill No. 1899 is replete with indications of its statutory purpose. The following excerpt from the legislative record is illustrative: "The author introduced this bill to bring needed relief to the victims of the Northridge earthquake. He states that the one-year statute of limitations contained in Insurance Code Section 2071 has unfairly barred victims from being compensated for their losses because many were tragically misled about the extent of damage suffered as a result of the earthquake. [¶] . . . [¶] News accounts have asserted that many of the quake victims have yet to receive full and fair compensation from their insurance companies to cover the costs incurred as a result of the quake. Many victims, the accounts state, have received only partial settlements for their earthquake claims, and others have received no compensation at all, having been improperly told that the damage they suffered was below policy deductibles. In subsequent years, families have discovered damage that either was ignored or missed by the original claims adjuster, yet some insurers, according to these news accounts, have stonewalled claims, leaving homes, condominiums and apartment buildings in shambles and homeowners without any recourse." ' "[5]

---

[4] Section 340.9, subdivision (a).

[5] *Migliore v. Mid-Century Ins. Co.* (2002) 97 Cal.App.4th 592, 610 [118 Cal.Rptr.2d 548].

■ " 'In construing a statute "we begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " [Citations.] "An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them." [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." ' [Citations.]"[6]

However, if the statutory language is unclear or ambiguous, our task is to construe the statute.[7] A statute "must be interpreted to avoid an absurd result that does not advance the legislative purpose. [Citation.] We are not free to give the words of a statute a definition 'different from the plain and direct import of the terms used.' "[8] "To ascertain the common meaning of a word, 'a court typically looks to dictionaries.' "[9]

■ As the two terms are defined in the Insurance Code, it is generally true an insurance agent acts on behalf of an insurer and an insurance broker acts on behalf of an insured.[10] An individual cannot act as an insurance agent in California without a valid license issued by the Commissioner of Insurance and a notice of the agent's appointment by the insurer filed with the Department of Insurance.[11] But it also is possible for an agent to represent both the insurer and the insured in connection with the same transaction.[12] Furthermore, "[t]he existence and scope of agency is a question of fact in each case."[13]

The trial court determined there was no triable issue as to whether Stovall was the Fair Plan's representative. Relying primarily on dictionary definitions of the term "representative," the court reasoned a "representative" "is a person authorized to act on another's behalf" and that Stovall was the

---

[6] *Migliore v. Mid-Century Ins. Co., supra,* 97 Cal.App.4th at page 610.

[7] *People v. Massicot* (2002) 97 Cal.App.4th 920, 925 [118 Cal.Rptr.2d 705].

[8] *Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* (2004) 114 Cal.App.4th 1185, 1190 [8 Cal.Rptr.3d 475].

[9] *People v. Whitlock* (2003) 113 Cal.App.4th 456, 462 [6 Cal.Rptr.3d 389].

[10] Insurance Code sections 31, 33; Croskey et al., California Practice Guide: Insurance Litigation (Rutter Group 2004) paragraphs 2:3, 2:7.

[11] Insurance Code sections 31, 33; Croskey et al., California Practice Guide: Insurance Litigation, *supra,* paragraph 2:5.

[12] Insurance Code sections 31, 33; Croskey et al., California Practice Guide: Insurance Litigation, *supra,* paragraph 2:16.

[13] Croskey et al., California Practice Guide: Insurance Litigation, *supra,* paragraph 2:13; see Insurance Code sections 31, 33.

Arochos' representative rather than Fair Plan's. Thus he was not authorized to act on behalf of Fair Plan. But the definition the trial court used for a "representative" is indistinguishable from the definition of an "agent."[14]

In effect, the trial court equated the statutory term "representative" in section 340.9 with the statutory term "agent" as defined in Insurance Code section 31.[15] Yet the Legislature, clearly aware of the latter term and its meaning in the insurance context, studiously avoided using it in section 340.9 when defining the type of person insureds must have "contacted" before January 1, 2000, in order to qualify for a one-year resurrection of the statute of limitations for filing a lawsuit. If it wanted to require an insured to have contacted someone "authorized to act on [the insurance company's] behalf" the Legislature presumably would have used the term "agent." This alone suggests the Legislature intended the word "representative" to have a different and broader meaning in section 340.9 and casts doubt on the trial court's construction of "representative."

In its principal argument responding to Fair Plan's summary judgment motion, the Arochos contend the Legislature intended the term "representative" to embrace insurance "brokers" (despite the insurance code defining them as working for the insured)[16] as well as insurance "agents" who work for insurance companies. They reasoned the average insured could not be expected to know the legal technicalities differentiating an insurance agent from an insurance broker. In particular, they could not be expected to comprehend a broker worked for them and "did not act on the insurance company's behalf." The only purpose of limiting section 340.9 relief to insureds who had "contacted" an insurance company's "representative" before January 1, 2000, was to ensure those insureds had made a previous good faith effort to report their earthquake loss before section 340.9 offered the benefit of a renewed limitations period. According to the Arochos' position, this legislative purpose was fulfilled when shortly after the Northridge earthquake the Arochos reported their losses to the insurance agent (who happened to work for an insurance broker) they reasonably believed was a "representative" of the insurance company.

---

[14] "Agent" is "one who is authorized to act for or in the place of another." (Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 22.)

[15] " 'Insurance agent' means a person authorized, by and on behalf of an insurer, to transact all classes of insurance other than life insurance. [¶] An insurance agent is also authorized to transact 24-hour care coverage, as defined in Section 1749.02." (Ins. Code, § 31.)

[16] " 'Insurance broker' means a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer." (Ins. Code, § 33.)

■ As the Arochos argue, it is possible the Legislature indeed intended to include independent insurance brokers, along with insurance agents working for insurance companies, within the scope of the term "representative." But we need not reach that issue to resolve this case. As explained below, here the insurance company, Fair Plan, through its insurance policy and its contractual arrangements with its "producers" (including Stovall and the insurance brokerage at which he worked) invited its insureds to report losses to those producers and, in turn, authorized the producers to forward those loss claims to Fair Plan. In effect, as to the initial claims reporting process, Fair Plan's producers were "authorized to act on its behalf."

In the evidentiary support accompanying its summary judgment motion, Fair Plan included a copy of the insurance policy given to the Arochos. It also included a copy of the "Producers Manual" which it supplied to all the independent brokers and other "producers" it used to carry out its business.

In the section of the insurance policy entitled "Your Duties After Loss," Fair Plan instructed its insureds to "give immediate notice to us *or our agent.*" Fair Plan did *not* require this contact be made directly to the insurance company itself—as many companies do. Instead it told its insureds Fair Plan had "agents" they could contact instead, in order to comply with their contractual duty to immediately report their losses. The only "agents" most of Fair Plan's insureds would have dealt with would be the "agents" affiliated with the broker-"producers" who had sold them their Fair Plan policies. The Arochos' depositions certainly demonstrate this was true for them. At a minimum, Fair Plan's own policy language would mislead many if not most reasonable insureds to believe a contact with a broker or a broker's agent was the way to provide the required notice. Having caused this reasonable belief, Fair Plan is hard pressed to now complain a contact with such an agent does not qualify as a contact with one of its "representatives" within the context of section 340.9.

In addition to Fair Plan's policy language instructing its insureds what to do when making an initial contact about a loss, Fair Plan's arrangements with its "producers" likewise supports a conclusion those producers were actual (as well as apparent) "representatives" of Fair Plan—at least in the claim reporting process.

To begin with, although disclaiming its "producers" are its "agents"[17] the only source of compensation Fair Plan allows those producers are the commissions it pays on the policies issued. The Producers Manual specifically "reminds all producers that no insurance producer shall make any

---

[17] See pages 470–472, *post.*

charge to the applicant, directly or indirectly, for furnishing any person the necessary application forms, technical assistance or services necessary to perfect an application to the Plan, other than the commission rates shown." Remembering the adage, "he who pays the piper calls the tune," one might question whether these "producers" are entirely the "agents" of the insureds who do not pay them anything for their work and not at all the agents of the insurance company which provides their sole and entire compensation for that work.

But setting this preliminary issue aside, other critical language appears in the Producers Manual and reads as follows:

### "CLAIMS PROCEDURE

"To facilitate handling with minimum of time, it is requested Acord Property Loss Notice be completed and transmitted as soon as practical following occurrence. The Acord I (Cal) Loss Notice will be furnished upon request from Insurance Services Office, 160 Water Street, New York, NY 10038 Attn: Customer Service Department, (212) 487-5189. The Insurance Services Office has requested their order blank be used when ordering the Acord Form I.

"The Acord Property Loss Notice should be forwarded to the California FAIR Plan Association, 4201 Wilshire Boulevard, Suite 500, Los Angeles, California 90010, Attention: Claims Department. Please supply all pertinent policy information, date of loss and brief description of circumstances surrounding the occurrence. Claims which may require immediate attention and/or serious involvement may be telephoned collect to the Claims Department of the California FAIR Plan Association, Area Code (213) 939-7991. The Claims Department will make every effort to acknowledge receipt of Notice of Loss, along with the name of adjusting facility on same day Notice of Loss is received.

"The FAIR plan has installed a FAX machine for the exclusive purpose of expediting claims. The FAX number is (213) 939-0417. The Acord loss report form is preferred, however, you may utilize other loss report forms which may be available. PLEASE DO NOT TRANSMIT MATTERS OTHER THAN CLAIMS."

As is more than apparent from these instructions, Fair Plan fully expected all or at least many of its insureds, such as the Arochos, to report their losses to the Plan's "producers," such as Stovall or the brokerage that employed him. The Producers Manual could have instructed those "producers" to tell the insureds they had nothing to do with claims reporting and therefore the

insureds had to contact the Fair Plan headquarters directly. But instead the manual laid out the procedures and forms it expected those "producers" to use in transmitting to headquarters the loss reports they received from people to whom those "producers" had sold Fair Plan insurance policies. Whether or not Fair Plan provided other means of reporting losses and had other agents assigned to accept claims—a possibility not reflected one way or the other in the record—is irrelevant. Fair Plan itself obviously expected its insureds to report claims to its "producers" and made express provisions for those producers to transmit such claims to the company's claims department. This is enough to create at least a triable issue Fair Plan itself viewed these "producers" as Fair Plan "representatives," at least for purposes of claims reporting.

Fair Plan offers two arguments against the proposition the Producers Manual makes its "producers" qualify as Fair Plan "representatives" for purposes of the initial contact about claims and thus for purposes of section 340.9.

The first is a procedural argument—appellants failed to raise this particular ground for finding Stovall and the Kosmos Insurance Agency to be "representatives" before the trial court, doing so for the first time on appeal. We are not persuaded by this procedural argument for two reasons.

First, the issue of whether the broker was a "representative" within the meaning of section 340.9 was very much before the trial court, and furthermore respondents themselves supplied the evidence on which this particular argument is based. This is not a case where an appellant belatedly asks the appellate court to consider some new evidence not before the trial court. Rather the Arochos only made a new argument on appeal for the general position they had urged before the trial court. It is as if they found and briefed a new appellate opinion they had not presented to the trial court. All the evidence required to address this legal issue already is in the record on appeal and, moreover, was before the trial court.

Second, Fair Plan's position understates the appellate court's role in considering an appeal from the grant of a summary judgment motion. We examine that issue de novo—reviewing all the evidence before the trial court and assessing whether there is any material triable issue under any viable legal theory the pleadings present. Had the Arochos failed to raise this new argument based on the evidence in the record, this court in discharging its own responsibilities to undertake a full de novo review, should and would

have identified the triable issue explained above. We, of course, could not have decided the case on that basis unless and until we offered the parties an opportunity to brief and argue the issue. But here, because the Arochos included a discussion of the issue in their opening brief and Fair Plan responded in its own brief, we are free to consider, decide and in this instance reverse the summary judgment based, in large part, on the language of the Producers Manual.

Moving to the merits of the issue, Fair Plan urges its "producers," such as Stovall, cannot be their "representatives" for purposes of section 340.9 because of other language in the Producers Manual. That language tells the producers Fair Plan does not consider them to be "agents" or as its "agents or representatives" and so they cannot "bind" Fair plan. That language appears at two different places in the manual.

Under a heading providing "General Information Vital to Producers Conducting Business with the Fair Plan" the following language appears:

"Producers are not agents of the California FAIR Plan Association and cannot bind the California FAIR Plan in any way."

Then in the "Endorsements" section of the policy, the following language appears:

"The Producer is not the Fair Plan's agent and may not bind the Fair Plan. No insurance producer (commonly called an 'insurance agent' or 'insurance broker') is an agent or representative of the Fair Plan in any respect, and no insurance producer is authorized to bind the Fair Plan in any manner. Endorsements to FAIR Plan policies must be signed by an employee of the FAIR Plan authorized to do so, and no endorsement may be validly issued or signed by any other person on behalf of the FAIR Plan."

There are at least three problems with Fair Plan's contention these two disclaimers inside its Producers Manual are enough to counter the position its "producers" are its "representatives," even in the loss reporting process and within the meaning of that term in 340.9.

First, those disclaimers are strictly "inside baseball." They are addressed solely and privately to the "producers," not the people Fair Plan insures and who might contemplate making a claim under the policy. They advise the very producers the insurance company is expecting and authorizing to receive and forward loss claims to it that they are not "agents or representatives" of that company. But simultaneously the policy Fair Plan issues to its policy holders advises them they have the choice of reporting claims to its "agents"

as well as directly to the company, and nowhere does the company or its producers inform its policyholders its producers are not its agents or representatives for that purpose. To the contrary, as to the loss reporting function the producers are instructed to perform as if they were agents and/or representatives, guaranteeing they will convey to insureds the impression they indeed are Fair Plan's agents or at the least its representatives for this purpose.

Second, the language is inconsistent with and ineffectual to negate an actual representative relationship Fair Plan has established elsewhere in the Producers Manual. It is as if the Producers Manual, without calling them "agents," used all the magic words and conferred all the authority and powers a full-fledged "agent" might exercise with respect to all insurance functions, but then included this disclaimer about them not being agents. In this instance, Fair Plan's Producers Manual treated its "producers" as "representatives" or perhaps even "agents" for purposes of receiving and transmitting loss claims from their insureds. This insurer cannot reasonably claim an insured who reported a loss to someone the company had empowered and instructed to receive such loss reports and pass them on is not a "representative" for purposes of section 340.9, no matter what the company's internal disclaimers may say.

Third, the disclaimer language Fair Plan cites in its Producers Manual appears to be directed not at claims receiving and processing but primarily to make clear to the producers they lack the power to issue "binders" or otherwise "bind" the company to an insurance contract before the company has agreed to be bound. The language about "binding" has no relevance to the issue whether a loss report to a "producer" satisfies the notice requirement of section 340.9. Nothing in section 340.9 suggests the only loss notice that counts is a notice to someone who can "bind" the insurance company. Indeed, few if any frontline company employees or agents are empowered to bind the company to payment of a claim. But many, including in Fair Plan's case its producers, are expected and allowed to receive the initial contact about a claim and transmit it to the company.

In summary, it is undisputed the Arochos contacted Stovall, the Fair Plan producer who wrote their earthquake policy, and reported their losses shortly after the Northridge earthquake. For reasons expressed above, this contact satisfied the statutory requirement of section 340.9 these insureds have contacted a "representative" of Fair Plan before January 1, 2000. Accordingly, this summary judgment against the Arochos was improper and must be reversed.

## DISPOSITION

The order granting summary judgment against appellants is reversed and the cause remanded for further proceedings consistent with this opinion. Appellants to recover their costs on appeal.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied December 15, 2005, and respondent's petition for review by the Supreme Court was denied March 22, 2006, S140233. George, C. J., did not participate therein.