Filed 1/31/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GAETON ST. CYR et al., | B243159 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC422741/ BC425950) |
| v. | |
| CALIFORNIA FAIR PLAN ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed.

Law Office of Denise Jarman, Denise Jarman; Kreindler & Kreindler, and Gretchen M. Nelson for Plaintiffs and Appellants Gaetan St. Cyr, Doug Pace, Julie Pace, Marc Musicant, Mark Kofler, and Chris Walden.

Ball & Roberts, Stephen C. Ball, and John A. Roberts for Plaintiffs and Appellants Gary Reisenweber and Ivana Noell.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, and Elise D. Klein for Defendant and Respondent.

In 1968, the Legislature enacted the California FAIR Plan to provide property insurance to the otherwise uninsurable. Appellants, who lived in high fire risk areas, were insured under the FAIR Plan. Following the loss of their homes and other tangible property following wildfires, appellants were paid the full amount of their policy limits. Appellants contend, however, that they were entitled to additional payments. The trial court disagreed, determining that respondent California FAIR Plan Association had met its contractual and statutory obligations to them. The court dismissed appellants' actions against respondent, after sustaining a demurrer to their first amended complaints. Appellants contend the trial court erred, as they were entitled to the protections provided in the standard form fire policy set forth in Insurance Code section 2071.[1] We conclude that respondent has satisfied both its contractual obligations under the policies issued and the requirements of section 2071. Accordingly, we affirm the trial court's determination that appellants failed to state a cause of action against respondent.

## PROCEDURAL HISTORY

Beginning in September 2009, appellants filed several complaints against respondent.[2] In their first amended complaints, appellants admitted that respondent paid them the "actual cash value" (ACV) of their respective policies within weeks of their losses. However, they alleged that the amount was insufficient to cover

---

[1]    All further statutory references are to the Insurance Code, unless otherwise stated.

[2]    The complaints included:  *St. Cyr v. California FAIR Plan Assn.* (Super. Ct. L.A. County, 2010, No. 422741); *Reisenweber v. California FAIR Plan Assn.* (Super. Ct. L.A. County, 2010, No. 425950), and *Noell v. California FAIR Plan Assn.* (Super. Ct. L.A. County, 2010, No. 25951).  The trial court sustained a demurrer to a fourth complaint, *Moseley v. California FAIR Plan Assn.* (Super Ct. L.A. County, 2009, No. 428593), but the plaintiff in that case is not part of this appeal.

their total losses, and that in issuing such policies, respondent had provided less protection than statutorily mandated by the "Basic Property Insurance Inspection and Placement Plan," sections 10090 through 10100.2.[3] Specifically, they contended that respondent was required to issue a policy in accordance with the standard form fire insurance policy set forth in section 2071 and the "'Basic Property Insurance' written in the normal market." One appellant asserted that the "Basic Property Insurance written in the normal market is the standard form policy known as the 'HO-3.'" According to appellants, respondent's policy did not comply with the statutory requirements of section 2071. Specifically, they asserted that "an insurer must minimally insure for the actual cash value (ACV) of [the] dwelling" and provide a "measure of indemnity for a total loss equal to the expense of the insured of replacing the thing lost or injured." They further alleged that respondent's policy improperly excluded coverage available in the "insurance industry standard 'Basic Property Insurance' policy," including coverage for "'Other Structures,'" "'Additional Living Expenses,'" "trees and shrubs," "debris removal," "'fair rental value,'" and "building code upgrades." These purportedly improper exclusions effectively reduced the promised coverage for total losses by 35 percent.

One complaint (the *St. Cyr* complaint) alleged class action claims pursuant to the unfair competition law (UCL), Business & Professions Code sections 17200 et seq., for the same underlying conduct. Another complaint (the *Reisenweber* complaint) alleged causes of action for negligence and fraud against the appellant's

---

[3] Plaintiffs amended their complaints; Reisenweber amended his complaint three times. However, the substantive allegations remain essentially the same over the course of the amendments. As the trial court sustained a demurrer to the first amended complaints, we focus on the allegations in those complaints.

insurance broker. These fraud and negligence causes of action were subsequently dismissed with prejudice.

The trial court determined that the complaints were related, and ordered all counsel to engage in a common meet-and-confer. On May 21, 2010, respondent filed a motion seeking to dismiss all related actions, or in the alternative, for a stay pending action by the Insurance Commissioner (Commissioner) under the primary jurisdiction doctrine. Respondent also filed demurrers to the complaints.

On September 10, 2010, the trial court denied respondent's motion to dismiss, but granted its motion to stay the related actions. In its order, the court also referred four issues to the Commissioner to determine. On January 4, 2012, the Department of Insurance (Department) informed the court and the parties that: "The issues presented do not appear to involve issues of primary jurisdiction with the Commissioner. The Department did approve the FAIR Plan's rate filing based upon the forms submitted to the Department, and there is no information presented to show that any changes to the forms resulted in a change to their rate impact. If forms are changed and there is a rate impact, the FAIR Plan would need to submit those to the Department for review and approval. . . . It is not clear how the FAIR Plan could issue an HO-3 form since it was not submitted as part of its rate plan nor is the FAIR Plan authorized to issue some of the coverages offered under that form." Subsequently, on January 30, 2012, the court ordered respondent to file new demurrers and/or other filings, and set a briefing schedule.

On March 5, 2012, respondent filed a demurrer to the complaints. The demurrer asserted that appellants had failed to state a cause of action for bad faith breach of contract, for breach of contract, or for unfair business practice, because (1) the Commissioner had approved all of the challenged features of the FAIR Plan, (2) the FAIR Plan satisfied the statutory requirements for "'basic property insurance,'" and (3) under the statutory scheme, the Commissioner, not the court,

4

must determine whether the FAIR Plan should have expanded coverage beyond that presently provided in the plan.

Appellants opposed the demurrer, arguing that respondent is statutorily mandated to write a policy no more restrictive than the "California Standard Form Fire Policy" set forth in section 2071, which, they contended, required at a minimum that all of the insured property be covered for its ACV. Appellants also contended that sections 10090 through 10100.2, establishing the FAIR Plan, did not implicitly or explicitly repeal the mandatory provisions set forth in section 2071. Appellants further contended that respondent failed to establish that the Department ever approved its policy forms.

In reply, respondent contended that appellants are bound by the terms and conditions of their policies, that its fire policy complied with the requirements of section 2071, and that the disputed portions of its fire policy were approved by the Commissioner.

On May 10, 2012, the court sustained respondent's demurrer without leave to amend. The court found that respondent "performed the contract as written and that the insurance contract form did in fact comply with the applicable requirements of the Insurance Code." The court determined that section 2082 did not require respondent to use the standard form fire policy, that the FAIR Plan could deviate from the standard form fire policy, that applying all losses to a single stated policy limit is acceptable, that the Commissioner had acquiesced in the FAIR Plan's use of its policy form, and that any challenge to that form should be raised with the Commissioner.

On June 8, 2012, a judgment of dismissal against appellants and in favor of respondent was entered. Appellants filed notices of appeal from the judgment. The appeals were consolidated September 13, 2012. On October 31, 2013, appellants filed a request for judicial notice, asking this court to take judicial notice

5

of respondent's July 31, 2009 rate filing.  On January 8, 2014, this court granted the request for judicial notice.

## DISCUSSION

A.  *Standard of Review*

"In reviewing an order sustaining a demurrer, we assume well-pleaded factual allegations to be true and examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action on any legal theory. [Citation.]"  (*Kyablue v. Watkins* (2012) 210 Cal.App.4th 1288, 1292.)  Because the demurrer was sustained based upon an interpretation of certain provisions of the Insurance Code, we must determine whether the trial court's interpretation was correct.  "Statutory interpretation is a question of law subject to our independent review."  (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 524.)  "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]  We do not, however, consider the statutory language 'in isolation.'  [Citation.]  Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .  [Citation.]'  [Citation.]"  (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)

B.  *The California FAIR Plan*

In response to insurers' reluctance to write "basic property insurance" for homeowners who live in high risk or otherwise uninsurable areas, in 1968, the Legislature enacted the "Basic Property Insurance Inspection and Placement Plan," sections 10090 through 10100.2.  The purposes of the statute are to:  (1) assure stability in the property insurance market, (2) assure the availability of basic property insurance as defined in the Plan, (3) encourage the maximum use, in

6

obtaining basic property insurance, of the normal insurance market, and (4) provide for the "the equitable distribution among admitted insurers of the responsibility for insuring qualified property for which basic property insurance cannot be obtained through the normal insurance market by the establishment of a FAIR Plan (fair access to insurance requirements), an industry placement facility and a joint reinsurance association." (§ 10090.)

"Basic property insurance" is defined as

"insurance against direct loss to real or tangible personal property at a fixed location in those geographic or urban areas designated by the commissioner, from perils insured under the standard fire policy and extended coverage endorsement and vandalism and malicious mischief and such other insurance coverages as may be added with respect to such property by the industry placement facility with the approval of the commissioner or by the commissioner, but shall not include insurance on automobile or farm risks. [¶] For the purposes of earthquake coverage that is provided as a component of basic property insurance, the association shall sell only the policy described in Section 10089. In force policies of basic property insurance that include earthquake coverage shall be renewed with the coverage specified in Section 10089, and the association shall comply with the notice requirements of paragraph (2) of subdivision (a) of Section 10086." (§ 10091, subd. (c).)

Under the statutory scheme, respondent is an involuntary joint reinsurance association of all insurers authorized to "write and engage[] in writing in [California], on a direct basis, basic property insurance or any component thereof in multiperil policies." (§§ 10094, 10098.) Respondent is the insurer of last resort, that is, respondent is statutorily mandated to make available basic property insurance to any "persons having an interest in real or tangible personal property who, after diligent effort . . . , are unable to procure such insurance through normal channels from an admitted insurer." (§ 10094.)

Respondent is statutorily mandated to propose a plan of operation that provides, among other things, for the allocation of profits and losses arising from

7

the FAIR Plan among the insurers, based upon the respective insurer's proportion of the California insurance market. (§ 10095.) In setting the rates for the FAIR Plan, the statute mandates that the rates "shall not be excessive, inadequate, or unfairly discriminatory, and shall be actuarially sound so that premiums are adequate to cover expected losses, expenses and taxes, and shall reflect investment income of the plan. If the plan returns premiums to members annually, the rates shall not include any component relating to surplus enhancements." (§ 10100.2) From 1968 through 2008, the cumulative underwriting results under the California FAIR Plan were a loss.

The Commissioner is authorized to review and approve (or disapprove) respondent's plan of operation. The statute provides:

> "The plan shall be subject to the approval of the commissioner and shall go into effect upon the tentative approval of the commissioner. The commissioner may, at any time, withdraw his or her tentative approval or he or she may, at any time after he or she has given his or her final approval, revoke that approval if he or she feels it is necessary to carry out the purposes of the chapter. The withdrawal or revocation of that approval shall not affect the validity of any policies executed prior to the date of the withdrawal. If the commissioner disapproves or withdraws or revokes his or her approval to all or any part of the plan of operation, the association shall, within 30 days, submit for review an appropriately revised plan or part thereof, and, if the association fails to do so, or if the revised plan so filed is unacceptable, the commissioner shall promulgate a plan of operation or part thereof as he or she may deem necessary to carry out the purpose of this chapter." (§ 10095, subd. (f).)

The statute also authorizes the Commissioner to review any act or decision by respondent, subject to judicial review. (§ 10096.) It provides: "Any applicant or affected insurer shall have the right of appeal from any act or decision of either the facility or the association to the governing committee. A decision of the committee may be appealed to the commissioner within 30 days after such

8

decision. Upon such appeal the commissioner may make any order to implement the purposes of the chapter and the plan." (§ 10096, subd. (1).)

C.    *Order Sustaining the Demurrer to the First Amended Complaints*

The trial court determined that appellants had not stated a cause of action against respondent, as respondent had fulfilled its contractual obligations under the written insurance policy, and the policy complied with the applicable requirements of the Insurance Code. On appeal, appellants contend (1) that respondent breached its duty under section 10100.2 to write a fire policy on a form approved by the Commissioner, (2) that respondent was required under sections 2070 and 2082 to write a fire policy using the line-numbered statutory form set forth in section 2071, and (3) that respondent's policy does not provide the basic coverage mandated in section 2071.[4]

1.    *Section 10100.2*

Section 10100.2, subdivision (a)(1) provides that rates for the California FAIR Plan must not be excessive, inadequate, or unfairly discriminatory and must be actuarially sound. Under the rate filing instructions for the Department, insurers must submit a rate filing for any new rates or forms with "rate impact." A "rate impact" includes "any contract[ual] language change(s) that affect the rate or cost of coverage due to broadening or restricting of coverage." Appellants assert -- and

---

[4]    Appellants also contend that the trial court could not sustain the demurrer, as they had alleged that they "were told by representatives of the FAIR Plan prior to the fires, that their policies provided coverage which it did not." We disagree, as appellants have not alleged a separate claim for fraud against respondent. Nor did they seek in the trial court or on appeal to amend their complaints to assert such a claim. During oral argument, appellants asserted that their allegations were sufficient to state a cause of action for unfair or fraudulent business practices under the UCL. As this point was not raised in the appellate briefs, it is forfeited. Even were we to consider it, we would reject the argument. After an independent review of the allegations, we conclude appellants have not stated a cause of action under the UCL.

respondent does not dispute -- that in its 1997 rate filing, respondent submitted a fire policy form to the Commissioner identical to the standard form fire policy set forth in section 2071. The fire policy forms issued to appellants, however, were different from the standard form fire policy and were never specifically approved by the Commissioner. Thus, according to appellants, respondent breached its statutory duty under section 10100.2. We disagree.

Section 10100.2 and the Department's rate filing instructions do not mandate the use of any specific form. An insurer need seek approval from the Commissioner only for a change in form that has a rate impact. Here, the Commissioner was asked to opine on the fire policy forms respondent had issued to appellants. The Commissioner's response was that "there is no information presented to show that any changes to the forms resulted in a change to their rate impact." If appellants disagree with this determination, their remedy is to present further information to the Commissioner, or to seek a writ of mandamus compelling the Commissioner to review the California FAIR Plan forms again.

2.    *Sections 2070 and 2082*

Appellants next contend that under sections 2070 and 2082, respondent was statutorily required to use the line-numbered statutory form set forth in section 2071. We disagree.

Section 2070 provides:

> "All fire policies on subject matter in California shall be on the standard form, and, except as provided by this article shall not contain additions thereto. No part of the standard form shall be omitted therefrom except that any policy providing coverage against the peril of fire only, or in combination with coverage against other perils, need not comply with the provisions of the standard form of fire insurance policy . . .; provided, that coverage with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy."

10

Section 2082 provides:

"Any insurers, other than corporations, issuing policies on subject matter in California, shall use the standard form, changing only such words as refer to the corporation or company, to officers or agents of the corporation or company, or to its organization.  Such other insurers may substitute, in place of the words having peculiar reference to corporations, appropriate words having similar reference to themselves."

Read in conjunction, sections 2070 and 2082 require insurers who issue fire policies to use the line-numbered statutory form set forth in section 2071 without any additions or omissions, with the following exceptions.  First, unincorporated insurers may substitute words referring to "corporation or company, to officers or agents of the corporation or company, or to its organization" to "appropriate words having similar reference to themselves."  (§ 2082.)  Second, if the fire policy covers the perils of fire only, or covers the peril of fire in combination with coverage against other perils, that policy "need not comply with the provisions of the standard form of fire insurance policy" "provided, that coverage with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy."  (§ 2070.)  Here, respondent falls within both exceptions.  First, as an unincorporated association, it may substitute words having peculiar reference to corporations with appropriate words referring to itself.  Second, as the FAIR Plan policy covers both fire and other perils, such as vandalism and malicious mischief, (see § 10091), the policy form need not comply with the provisions of the standard form of fire insurance policy set forth in section 2071, so long as it provides coverage substantially equivalent, or more favorable, to the insured.  Thus, respondent was not statutorily required to use the line-numbered statutory form set forth in section 2071.

3.    *Section 2071*

Under the enabling statute of the FAIR Plan, respondent is statutorily mandated to provide coverage for "perils insured under the standard fire policy." (§ 10091, subd. (c).)  Under section 2070, it is mandated to provide "coverage with respect to the peril of fire, [that] when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy."  Appellants contend that respondent failed to do so. They contend that under the standard form fire policy, they were entitled to the ACV of their dwelling and other real and tangible property at the insured location, and/or that they were entitled to additional coverages that do not reduce or "take away" from their coverage for total losses.

Section 2071 provides that the statutory form set forth in subdivision (a) of that section is the "standard form of fire insurance policy for this state."  The form is bare bones.  It provides spaces for "insertion of name of company or companies issuing the policy" and for "listing amounts of insurance, rates and premiums for the basic coverages insured under the standard form of policy and for additional coverages or perils insured under endorsements attached."  The form then states:

> "In consideration of the provisions and stipulations herein or added hereto and of ____ dollars premium this company, for the term of _____ . . . at location of property involved, to an amount not exceeding ____ dollars, does insure _____ and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at

12

each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere."

The standard form excludes coverage "for loss by fire or other perils insured against in this policy" caused directly or indirectly by, among other things, armed conflicts, neglect of the insured, and theft. It also provides that: "Any other perils to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto." (§ 2071, subd. (a).) The standard form does not mention coverage for loss of trees and shrubs, for debris removal, or for additional living expenses.

Under the plain language of the standard form fire policy, an insurer must insure, "to an amount not exceeding _____ dollars," the insured's property at the location of the property from all loss caused by fire or lightning and any other covered perils, to the extent of the ACV of the property at the time of loss, but not exceeding the cost to repair or replace the property, without including an allowance for increased costs due to building ordinances, and without compensation for loss from interruption of business; nor, in any event, for more than the interest of the insured. The phrase "to an amount not exceeding _____ dollars" precedes all further descriptions of coverage provided and thus, by its terms, fixes the maximum amount due under the policy. If, following a loss from fire, an insured were paid "an amount not exceeding _____ dollars," the insured would have received all that he or she was owed under the standard form fire policy. Respondent asserted below that it had paid appellants the full amount of their policy limits, and the trial court found respondent had fulfilled its obligations under the written insurance contracts. Respondent was required to do no more under the standard form fire policy. Contrary to appellants' contention, they were not entitled to the ACV of the dwelling and of other real and tangible property without

13

regard to the policy limits. They were entitled to such compensation only "to an amount not exceeding" the limits of their policies.

For similar reasons, appellants were not entitled to additional coverages in excess of their policy limits. For example, coverage for "Other Structures" or "trees and shrubs" is subject to the overarching policy limit set forth in the "amount not exceeding ____ dollars." Coverage for debris removal and for additional living expenses is not mentioned in the standard form. To the extent such coverage can be implied as part of the cost to repair or replace the property, which we specifically decline to find, such coverage is also subject to the policy limits.[5] Finally, coverage for building code upgrades or for loss of rental value was specifically excluded from the calculation of the ACV of the insured property; moreover, were such coverage included, it would be subject to the policy limits. In short, appellants have failed to show they were statutorily entitled to recover for losses in excess of their policy limits.[6],[7]

---

[5] In addition, we disagree with appellants' contention that section 2051.5, subdivision (b)(2) requires an insurer to provide 24 months of additional living expenses coverage for insured property located in a governmentally declared disaster area. That provision applies only if the policy already includes coverage for additional living expenses. The policies at issue here do not.

[6] On appeal, appellants do not argue that they were entitled to these additional coverages because, although not set forth in section 2071, subdivision (a), such coverages were provided for in the standard property insurance policy form used in California, HO-3. Thus, appellants have forfeited this argument. Even were we to consider it, we would reject it. As the Commissioner observed: "It is not clear how the FAIR Plan could issue an HO-3 form since it was not submitted as part of its rate plan nor is the FAIR Plan authorized to issue some of the coverages offered under that form." Moreover, we conclude that the enabling statute for the FAIR Plan does not mandate that respondent provide, as part of its basic property insurance plan, fire-related coverage in excess of that provided for in section 2071.

14

Appellants argue that our interpretation would effectively write out of the statute the phrase "to the extent of the actual cash value of the property at the time of loss . . . ." Not so. That phrase would take effect if the policy limits were not reached. For example, if the ACV of the insured property (as calculated after all exclusions) were $1 million, but the policy limits were $2 million, the insurer would be obligated to pay only the lesser amount. The other references in the standard form to "actual cash value" do not persuade us otherwise. In the "[r]equirements in case loss occurs," the insured is required to provide a written notice of the ACV of the property in a sworn proof of loss. That requirement does not affect the obligations of the insurer in the event the ACV exceeds the policy limits.

For the first time, in its reply brief, appellants argue that section 10103, subdivision (a)(2), which requires notice to the insured that "'[t]he limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home,'" alters the obligations of the insurer under the standard form, by requiring the insurer to pay the ACV of the insured property, even when it exceeds the policy limits. An argument raised for the first time in a reply brief is ordinarily not considered. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Even were we to consider it, we would reject it. Appellants are arguing that the notice required by section 10103, subdivision (a)(2) has impliedly repealed the phrase in section 2071 that an insurer need only insure property to "an amount not exceeding ____ dollars." An implied repeal of a statute is strongly disfavored. (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 487.) Appellants have not met

[7] We reject appellants' contention that respondent was required to include "conspicuous," "plain" and "clear" notice(s) that a single policy limit would apply to these additional coverages. The standard form set forth in section 2071 and the written provisions in the exemplar FAIR Plan policy form clearly provide there is a single overarching policy limit. No additional notice was required.

their burden of showing that section 10103, subdivision (a)(2) repealed part of section 2071.

Moreover, appellants' interpretation runs afoul of the statutorily defined "measure of indemnity" under an "open" policy set forth in section 2051. (See § 411 ["An open policy is one in which the value of the subject matter is not agreed upon, but is left to be ascertained in case of loss."].) The parties agree that the policies at issue are open policies. Section 2051, subdivision (b) provides that:

> "Under an open policy that requires payment of actual cash value, the measure of the actual cash value recovery, in whole or partial settlement of the claim, shall be determined as follows:
>
> "(1) In case of total loss to the structure, the policy limit or the fair market value of the structure, whichever is less.
>
> "(2) In case of a partial loss to the structure, or loss to its contents, the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less. . . ."

By its plain language, section 2051 provides that under an open policy that pays ACV, the amount an insurer must indemnify a policyholder for a total loss is the lesser of the policy limit or the fair market value of the structure. For a partial loss, the amount is the lesser of the policy limit or the cost to repair and replace the structure and its contents. Here, according to appellants, the fair market value of the insured property or the costs to repair and/or replace the property exceeded the policy limits. As appellants were paid the full amount of their policy limits, they were paid the amount due.[8]

---

[8] During oral argument, appellants' counsel asserted that under the "Loss Settlement" provision of the exemplar FAIR Plan policy, respondent agreed to pay the actual cash value for insured property without regard to the policy limit. We

16

In sum, respondent fulfilled its contractual and statutory obligations to appellants by timely paying them the full amount of their policy limits. Thus, appellants have failed to state a cause of action against respondent under any theory of liability. Accordingly, the trial court properly sustained respondent's demurrer to appellants' first amended complaints.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION.**



MANELLA, J.


We concur:



WILLHITE, Acting P. J.



EDMON, J*

---

disagree. Our review of that provision shows that the amounts payable for covered property losses were all subject to the policy's "Limit of Liability."

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17