Filed 11/8/24; modified and certified for publication 12/3/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ERIN HUGHES,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>        Defendant and Respondent. | B331083<br>(Los Angeles County Super. Ct. No. 21TRCV00431) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald F. Frank, Judge.  Affirmed.
        Law Office of Aleksandr Gruzman and Aleksandr Gruzman for Plaintiff and Appellant.
        Gordon Rees Scully Mansukhani, Peter Schwartz, Christopher R. Wagner, and Jennifer Y. Ro for Defendant and Respondent.

————————————

Plaintiff and appellant Erin Hughes obtained two homeowner's insurance policies to cover her real property. One of the policies, through the California FAIR Plan Association (FAIR Plan), covered loss due to fire. The other policy, issued by defendant and respondent Farmers Insurance Exchange (Farmers), did not. After a fire on the property caused significant loss, Hughes filed a lawsuit alleging Farmers was vicariously liable for the negligence of its agent that resulted in Hughes's underinsurance for fire loss under the FAIR Plan policy. The trial court granted Farmers' motion for summary judgment, finding as a matter of law that the agent was not acting within the scope of her agency with Farmers when she assisted Hughes in obtaining the FAIR Plan policy. The court also denied Hughes's motion for leave to amend her complaint. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Hughes's Policies and Fire Loss*

Hughes is the owner of real property in Malibu (the property). In December 2020, Hughes obtained an insurance policy to insure the property against fire loss through FAIR Plan. FAIR Plan "is an insurance industry placement facility and joint reinsurance association created by the Legislature in 1968 to ensure that homeowners who live in high risk or otherwise uninsurable areas have access to basic property insurance." (*California Fair Plan Assn. v. Garnes* (2017) 11 Cal.App.5th 1276, 1283; see Ins. Code, §§ 10090-10100.2.) FAIR Plan acts as "the insurer of last resort" and is "statutorily mandated to make available basic property insurance to any 'persons having an interest in real or tangible personal property who, after diligent effort . . . , are unable to procure such insurance through normal

channels from an admitted insurer.' " (*St. Cyr v. California FAIR Plan Assn.* (2014) 223 Cal.App.4th 786, 793, quoting Ins. Code, § 10094.)

Also in December 2020, Hughes obtained a homeowner's insurance policy from Farmers to cover the property against perils not covered by the Fair Plan policy. In so doing, Hughes signed a "Fair Plan Companion Endorsement" that became a part of the Farmers policy. The endorsement states that it "restricts and eliminates coverage" under the Farmers policy "for any peril which is covered or which is available for coverage by additional purchase under a California Fair Plan Association policy . . . whether or not you actually purchase coverage for any such additional peril." The endorsement includes "loss, damage or expense directly or indirectly caused by, arising out of, or resulting from . . . any fire" amongst the list of perils for which coverage under the Farmers policy "is deleted and eliminated." The endorsement further states "[t]his exclusion" shall apply "whether or not you actually purchase coverage for any optional peril under your FAIR Plan policy" and "whether or not the loss, damage or expense directly or indirectly caused by, arising out of, or resulting from any of the perils is actually covered under your FAIR Plan policy," and even "if you do not maintain your FAIR Plan policy in force, or it is cancelled or reduced" or "if coverage for loss, damage or expense under your FAIR Plan policy is not collectible."

Hughes obtained her FAIR Plan and Farmers policies with the assistance of Maritza Hartnett. Hartnett and Farmers had entered an agency appointment agreement recognizing Hartnett as an independent contractor authorized to sell insurance on Farmers' behalf.

3

In January 2021, Hughes sustained significant fire damage on the property, with estimated reconstruction costs of almost $3 million. A few days later, Hughes submitted a claim under the Farmers policy for fire loss. Farmers denied coverage based on the Farmers policy's exclusion of fire loss and advised Hughes she would have to pursue any such claim through the FAIR Plan.[1] Hughes's FAIR Plan policy had a coverage limit of $1.2 million.

B.    *Hughes's Complaint*

In June 2021, Hughes filed a complaint alleging causes of action against Hartnett for professional negligence, negligent misrepresentation, and breach of fiduciary duty, and alleging a negligence cause of action against Farmers.

Hughes alleged Hartnett "served as . . . an Agent for [Farmers] in advising Plaintiff on home owner insurance coverage and ultimately selling to Plaintiff in or about December of 2020 two home owner insurance policies including 1) [a] California FAIR Plan Policy . . . that included fire damage coverage and 2) [the Farmers] Policy[.]" Hughes alleged that, as an "insurance Advisor, Agent and Broker," Hartnett owed a duty of reasonable care in helping Hughes obtain sufficient insurance coverage. Hughes alleged Hartnett breached that duty by failing to inform and falsely advising her about the maximum coverage

---

[1]    Hughes later tendered another claim under the Farmers policy, this time asserting property loss in excess of $2 million due to theft that allegedly occurred around the same time as the fire. After Farmers denied that claim, she filed a separate lawsuit against Farmers, which is the subject of a separate appeal before this court (B331168).

4

available from the FAIR Plan and by failing to secure excess coverage and other possible coverage through the FAIR Plan. Hughes alleged that as a result she was "grossly underinsured" at the time of the fire loss.

As for her claim against Farmers, Hughes alleged Farmers both breached its duty of care by failing to properly train and supervise Hartnett and was vicariously liable for Hartnett's actions because Hartnett was acting as its agent when helping Hughes obtain her insurance policies.

C.   *Summary Judgment Proceedings*

1.   *Farmers' motion and supporting evidence*[2]

Farmers moved for summary judgment, arguing it was not vicariously liable for Hartnett's negligence because Hartnett was not acting as its actual or ostensible agent when she assisted Hughes in obtaining the FAIR Plan policy.

Farmers submitted a copy of Hartnett's "Agent Appointment Agreement" with "Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company, and their subsidiaries and affiliated insurers," collectively "the Companies."  Signed in May 2013, the

---

[2]   After completion of the initial briefing on Farmers' summary judgment motion, the trial court granted Hughes two continuances so she could conduct further discovery.  As part of that discovery, Hughes deposed Hartnett and additional witnesses from Farmers, including its person most qualified to testify about the FAIR Plan Companion Endorsement in Hughes's Farmers policy.  Each party filed two supplemental briefs and submitted additional evidence considered by the trial court in its final summary judgment ruling.

agreement states Hartnett shall be "an independent contractor for all purposes" who is authorized to "sell, solicit, and service insurance for the Companies" and required to "submit to the Companies every request or application for insurance for the classes and lines underwritten by the Companies and eligible in accordance with their published Rules and Manuals." The agreement further provides that insurance business written by Hartnett "will be placed with the Companies" or, if not acceptable to the Companies, through Kraft Lake Insurance Agency, Inc.[3] If the insurance business cannot be placed with the Companies or through Kraft Lake, the agreement provides that Hartnett may place the business through insurers "outside the Companies." FAIR Plan is not a party to the agreement.

Farmers also provided evidence that Farmers and FAIR Plan are two different insurance carriers that do not collaborate or communicate about their separate underwriting processes. Nagy declared that Farmers agents like Hartnett "do not represent Farmers Insurers when they procure insurance products from [FAIR Plan]." Rather, Nagy explained, FAIR Plan "sells its policies through a network of insurance brokers who represent policyholders, but are authorized to do business with [FAIR Plan]." To that end, Nagy opined, "[i]n procuring

_____

[3]     In his declaration, Zoltan Nagy, Farmers' Director of Home Office Agencies, described Kraft Lake as an "insurance brokerage available to assist [Farmers agents] when they are unable to place certain risks with" Farmers-affiliated insurers. Nagy further stated that Kraft Lake operates primarily as a resource for commercial risks and "has no role when a California homeowner needs to place a homeowners' insurance policy through California's homeowners' insurer of last resort, [FAIR Plan]."

6

insurance from [FAIR Plan] (which is not a Farmers[] entity), Hartnett acted as an insurance broker representing Ms. Hughes."

Hartnett likewise testified in her deposition that she was not acting on Farmers' behalf when she helped Hughes obtain the FAIR Plan policy. Rather, she sold the FAIR Plan policy to Hughes in her capacity as a registered FAIR Plan broker, and Hughes's FAIR Plan policy was purchased directly through the FAIR Plan. Hartnett received separate commissions from FAIR Plan and Farmers for the respective policies.

Hughes's FAIR Plan policy lists Hartnett's name and contact information under the title "YOUR INSURANCE BROKER." The FAIR Plan policy does not reference Farmers or Hughes's Farmers policy. Hartnett testified she never represented to Hughes that she was acting on Farmers' behalf in assisting with procuring the FAIR Plan policy, and she did not represent to Hughes that the FAIR Plan policy was offered through or issued by Farmers. In discovery responses, Hughes admitted Farmers did not issue the FAIR Plan policy, and she admitted she had previously insured the property against loss caused by fire with a FAIR Plan policy.

2.    *Hughes's opposition and supporting evidence*

Hughes asserted triable issues of fact remained regarding whether the scope of the agency relationship between Farmers and Hartnett encompassed Hartnett's procurement of the FAIR Plan policy for Hughes. Hughes contended Hartnett's agent appointment agreement with Farmers could "ha[ve] no effect" in her case "since [Hughes] had no knowledge of the existence of such contract." Hughes submitted her own declaration stating Hartnett "never informed me that she was acting as an independent broker and not an agent of Farmers when she was

7

selling the FAIR Plan Policy and FAIR Plain [*sic*] Endorsement to me as part of the same transaction that included my Farmers Policy. . . .  In fact she informed me that I would save money if I purchase [*sic*] the Farmers Policy and the FAIR Plan together as a packaged deal."  Hughes submitted evidence that Hartnett used her Farmers email address to send Hughes emails about the FAIR Plan Companion Endorsement in Hughes's Farmers policy, and that these emails displayed a Farmers logo; Hartnett had a "Farmers Insurance" sign above her office door; and Farmers' webpage listed Hartnett as a "Farmers Insurance Agent."

In addition, Hughes proffered evidence that Hartnett used Farmers' replacement cost estimating software to generate coverage limits for the Farmers policy, and then copied the same information to generate a quote for the FAIR Plan policy. Hughes asserted Hartnett's "gross underestimation" of the property's necessary coverage was based on Hartnett's reliance on incorrect information generated using Farmers software as well as her negligent failure to verify the accuracy of such information.

3.      *Trial court's ruling granting summary judgment*

The trial court determined Farmers carried its initial burden to present evidence showing Hartnett was not acting as its actual or ostensible agent when obtaining Hughes's FAIR Plan policy and Hughes failed to submit evidence establishing a triable issue remained.  As to actual agency, the court explained the evidence showed Hartnett was acting on behalf of Hughes as her insurance broker, and not Farmers' agent, when helping Hughes obtain the FAIR Plan policy.  As to ostensible agency, the court explained Hughes had not presented evidence showing Farmers acted in a manner that could have caused Hughes to

8

reasonably believe Hartnett was acting on its behalf for purposes of obtaining the FAIR Plan policy.

D.    *Hughes's Motion for Leave to Amend*

At 10:57 p.m. on the day before the summary judgment motion hearing, Hughes filed a motion for leave to amend her complaint, seeking to add negligence allegations against Hartnett, Farmers, and two new defendants, as well a breach of contract claim against Farmers based on its refusal to defend her in separate liability lawsuits pursuant to the Farmers policy.

Hartnett and Farmers separately opposed Hughes's motion. The court denied the motion after a hearing and subsequently entered judgment in Farmers' favor. Hughes timely appealed from the judgment.[4]

## DISCUSSION

Hughes asserts the trial court erred in granting summary judgment because triable issues of material fact existed regarding Farmers' vicarious liability for her insufficient fire loss coverage. Hughes also argues the trial court abused its discretion in denying her motion for leave to amend the complaint.

---

[4]    The record indicates Hughes later settled the remaining case with Hartnett before dismissing her with prejudice as a defendant. Hartnett is not a party on appeal.

9

A.   *The Trial Court Did Not Err in Granting Farmers' Motion for Summary Judgment*

1.   *Standard of review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; Code Civ. Proc., § 437c, subds. (c) & (f).)  We review a ruling on summary judgment de novo.  (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)  In so doing, we " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Ibid.*)

"A defendant may bring a motion [for summary judgment] on the ground the plaintiff cannot prove one of the required elements of the case or there is a complete defense to the action." (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702; see Code Civ. Proc., § 437c, subds. (o)(1), (2) & (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)  "To carry its initial burden when the motion is directed to the plaintiff's case rather than an affirmative defense, a defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action." (*Luebke*, at p. 702.)  "Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.' " (*Id.* at pp. 702-703; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)  "The plaintiff must produce ' "*substantial*" ' responsive evidence

sufficient to establish a triable issue of fact." (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.)

2.  *Vicarious liability and agency principles*

Hughes asserts Farmers is vicariously liable for Hartnett's negligent acts committed within the scope of her agency relationship with Farmers. A defendant "may be liable either for (1) *his own* negligence, in which case he is *directly* liable for the resulting [harm], or (2) *someone else's* negligence, in which case he is *vicariously* liable because—in the eyes of the law—the other person's negligence is deemed to be his own." (*Musgrove v. Silver* (2022) 82 Cal.App.5th 694, 705; see *Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 768 (*Pereda*).) A defendant "is [vicariously] liable for the torts committed by her agent within the scope of the agency." (*Pereda*, at p. 768; accord, *Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1443 ["Corporate employers may be held vicariously liable for the tortious acts of their agents committed within the scope of the agency or employment."].)

" 'Insurance agent' means a person authorized, by and on behalf of an insurer, to transact all classes of insurance other than life, disability, or health insurance, on behalf of an admitted insurance company." (Ins. Code, § 31.) " 'Insurance broker' means a person who, for compensation and on behalf of another person, transacts insurance other than life, disability, or health with, but not on behalf of, an insurer." (*Id.*, § 33.) "As the two terms are defined in the Insurance Code, it is generally true an insurance agent acts on behalf of an insurer and an insurance broker acts on behalf of an insured." (*Arocho v. California Fair Plan Ins. Co.* (2005) 134 Cal.App.4th 461, 466.)

11

"An agency is either actual or ostensible" (Civ. Code, § 2298; see *Pereda*, *supra*, 85 Cal.App.5th at p. 768), and "[a]n agent has such authority as the principal, actually or ostensibly, confers upon him" (Civ. Code, § 2315; see *West v. Solar Mosaic LLC* (2024) 105 Cal.App.5th 985, 994). "Actual agency is based on *consent*, and turns on whether the principal has the right to control the agent's conduct. [Citations.] Ostensible agency is based on *appearances*, and turns on whether the 'the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent' even though the third person is not *actually* an agent." (*Pereda*, at p. 768; see Civ. Code, §§ 2299, 2300.) "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." (Civ. Code, § 2330; see *Seneca Ins. Co. v. County of Orange* (2004) 117 Cal.App.4th 611, 619.) Conversely, "[a] principal cannot be held [liable] when an actual agent acts beyond the scope of his actual or ostensible authority." (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 573.) "A person who chooses to pursue a contract with a principal through a purported agent 'takes the risk not only of ascertaining whether the person with whom he is dealing is the agent, but also of ascertaining the scope of his powers.' " (*Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744.)

The existence of an agency relationship is typically a question of fact for the jury. (*Arocho v. California Fair Plan Ins. Co.*, *supra*, 134 Cal.App.4th at p. 466 [existence and scope of agency in the insurance context is a question of fact].) But the issue may be decided as a matter of law on summary judgment

12

where neither the evidence nor inferences are in conflict. (*Pereda*, *supra*, 85 Cal.App.5th at p. 702.)

### 3. *No triable issue of material fact regarding actual agency*

"An agency is actual when the agent is really employed by the principal."  (Civ. Code, § 2299.)  "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess."  (Civ. Code, § 2316.)  In other words, "[a]ctual agency arises when the principal's conduct causes the agent reasonably to believe that the principal consents to the agent's act on behalf of the principal."  (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1074; see v*an't Rood v. County of Santa Clara*, *supra*, 113 Cal.App.4th at p. 571 [actual agency "typically arises by express agreement" and requires " ' "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act" ' "]; accord, *Enmark v. KC Community Care, LLC* (2024) 105 Cal.App.5th 463, 472 [" ' " 'The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.' " ' "].)

Hartnett's agent appointment agreement with Farmers established she had authority to sell insurance on behalf of Farmers and its affiliates (i.e., "the Companies"), a defined universe of insurance companies that did not include FAIR Plan, a separate and unrelated insurance carrier.  Hughes submitted no evidence to show Hartnett had authority to transact insurance business on Farmers' behalf beyond the scope of the agreement, such that she had the authority to bind Farmers as its actual

13

agent when she assisted Hughes in obtaining the FAIR Plan policy. (See *Loehr v. Great Republic Ins. Co.* (1990) 226 Cal.App.3d 727, 734 [an insurance agent "may perform acts outside his agency . . . for which [the principal] would have no responsibility or liability"]; *Turner v. Citizens National. Bank* (1962) 206 Cal.App.2d 193, 202 ["An admission that a person is an agent does not adopt every act performed by him; the admission does not cover the extent of his authority."].)

Hartnett's lack of actual authority to act on behalf of Farmers for purposes of the FAIR Plan policy is confirmed by the FAIR Plan policy itself. That policy describes Hartnett not as a Farmers' insurance agent but rather as Hughes's "insurance broker." Unlike an insurance agent, an insurance broker " 'does not act for the insurer, and the insurer is not liable for the broker's acts or omissions.' " (*American Way Cellular, Inc. v. Travelers Property Casualty Co. of America* (2013) 216 Cal.App.4th 1040, 1052; accord, *Marsh & McLennan of Cal., Inc. v. City of Los Angeles* (1976) 62 Cal.App.3d 108, 117 ["The most definitive characteristic of an insurance agent is his authority to bind his principal, the insurer; an insurance broker has no such authority."].)[5]

---

[5] Hughes submitted a declaration from Karl Susman, a licensed insurance agent and broker, who opined that "Hartnett acted as an agent for [Farmers] in the course and scope of her employment with Farmers when she sold to Hughes the Farmers policy which included the California FAIR Plan Endorsement." Susman thus opined only that Hartnett was acting as a Farmers agent when she procured the Farmers policy—which included the FAIR Plan Companion Endorsement. Because Susman did not additionally opine on whether Hartnett was acting as Farmers'

14

Contrary to Hughes's assertion, Hartnett's use of Farmers' replacement cost estimating software to generate information for the Farmers policy that Hartnett used in procuring Hughes's FAIR Plan policy does not aid Hughes's argument that Hartnett was acting within the scope of her agency agreement with Farmers when she helped Hughes procure the FAIR Plan policy. No evidence suggests Hartnett acted *on behalf of* Farmers when she used its software for the dual purpose of generating information to obtain a FAIR Plan quote. Thus, the trial court correctly concluded as a matter of law that Hartnett was not acting as Farmers' actual agent with respect to the FAIR Plan policy.

4. *No triable issue of material fact regarding ostensible agency*

An agency is ostensible when a principal intentionally or negligently causes a third person to believe another individual is acting as its agent, even though the individual is not really employed by the principal. (Civ. Code, § 2300; *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1086.) "[A] principal's liability for the acts of an ostensible agent rests on the notion that the principal should be estopped from creating the false impression of agency." (*Pereda, supra*, 85 Cal.App.5th at p. 768.) "A defendant may be held liable as a 'principal' for the acts of the defendant's ostensible agent (that is, the third party who is not actually his agent) only if (1) the plaintiff, when dealing with the agent, did so 'with [a reasonable] belief in the agent's authority,' (2) that 'belief [was] generated by some act or

---

agent when she procured the Fair Plan policy, his declaration does not support Hughes's actual agency contentions.

15

neglect by the principal,' and (3) the plaintiff was not negligent in relying on the agent's apparent authority." (*Ibid.*; accord, *Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399; *Valentine*, at p. 1087.)

Hughes's contention that Hartnett never informed her "she was acting as an independent broker and not an agent of Farmers" when Hartnett helped procure the FAIR Plan policy is not sufficient to raise a triable issue as to whether Hartnett was Farmers' ostensible agent with respect to the FAIR Plan policy. Our inquiry necessarily focuses on conduct or omissions by *Farmers* that could have contributed to a reasonable belief by Hughes that Hartnett was acting as Farmers' agent in procuring the FAIR Plan policy, as opposed to the Farmers policy. (See *Pereda, supra*, 85 Cal.App.5th at p. 768 ["the appearance of agency 'must be based on the acts or declarations of the principal and not solely upon the agent's conduct' "]; accord, *Corrales v. California Gambling Control Com.* (2023) 93 Cal.App.5th 286, 305 [" 'Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists.' "]; Civ. Code, § 2322, subd. (b) [agent does not have authority to define scope of agency].) For this same reason, *Hartnett's* use of Farmers' replacement cost estimating software to generate information used for the FAIR Plan policy is not evidence suggesting ostensible agency.

Hughes also relies on the fact that Farmers apparently allowed Hartnett to display its logo on a sign at her office and in her email communications with Hughes. Generally, the use of a principal's trade name and logo by another does not alone demonstrate an ostensible agency relationship. (*Pereda, supra,*

16

85 Cal.App.5th at p. 770; accord, *Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 961-962; *Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284, 1288; cf. *Kaplan v. Coldwell Banker Residential Affiliates, Inc.* (1997) 59 Cal.App.4th 741, 747 [triable issue remained as to ostensible agency in part based on broker's display of Coldwell Banker's logo, where Coldwell Banker had made representations to the general public that reasonably could lead the public to believe it stood behind the broker].)  Here, Hartnett's mere use of Farmers' logo does not suggest an ostensible agency that would encompass Hartnett's procurement of the FAIR Plan policy.  The very reason Hughes needed a FAIR Plan policy to cover the property for fire loss was because she was " 'unable to procure such insurance through normal channels from an admitted insurer' " such as Farmers. (*St. Cyr v. California FAIR Plan Assn.*, *supra*, 223 Cal.App.4th at p. 793, quoting Ins. Code, § 10094.)  Thus, it was obvious Farmers would not be the principal standing behind Hartnett for the specific purpose of procuring a FAIR Plan policy for Hughes or anyone else.  Rather, in permitting Harnett to display its logo, Farmers was at most advertising Hartnett's agency for the specific purpose of selling *Farmers* insurance products and not those offered by other insurance carriers.  (See *Rios v. Scottsdale Ins. Co.* (2004) 119 Cal.App.4th 1020, 1027, 1029 ["[T]here was no ostensible agency, as there was no evidence that a principal intentionally, or by want of ordinary care, caused or allowed [the insured] to believe that [the insurance broker] possessed such authority to offer a policy other than that offered by the insurer."].)

Likewise, Hartnett's use of the Farmers logo in her communications with Hughes about the FAIR Plan Companion

17

Endorsement, and on the endorsement itself, does not assist Hughes. The FAIR Plan Companion Endorsement was part of the Farmers policy and simply informed Hughes that the *Farmers* policy excluded coverage for fire loss regardless of whether she obtained a *FAIR Plan* policy to cover such loss.

Because Hughes failed to present evidence that raises a triable issue regarding whether Hartnett was either an actual or ostensible agent of Farmers for purposes of the FAIR Plan policy, the trial court properly granted summary judgment to Farmers.[6]

---

[6] To the extent Hughes contends Farmers is liable on a direct negligence theory for its failure to train and supervise Hartnett leading to Hughes being underinsured for fire loss under the FAIR Plan policy, Farmers proffered evidence that Hartnett's agent agreement with Farmers did not impose any obligation on Farmers to train or supervise Hartnett with respect to insurance products that were not sold by Farmers, and Hughes failed to present any evidence to raise a dispute on this issue. Hughes also asserts in passing that Farmers was liable for "direct negligence" because its replacement cost estimating software caused her underinsurance. However, Hughes did not plead that theory of liability in the complaint, as shown by her belated and unsuccessful attempt to amend the complaint to add that allegation. (See *Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98, fn. 4 ["A defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers."].)

In addition, in her second supplemental opposition brief filed in the trial court, Hughes raised a new theory of liability that Farmers was operating a "joint venture" with FAIR Plan. However, Hughes's complaint did not adequately plead a joint venture theory or facts to support such a theory of liability. (See

18

B.      *The Trial Court Did Not Abuse Its Discretion in Denying*
        *Hughes's Motion for Leave to Amend Her Complaint*

Hughes contends the trial court erred in denying her motion for leave to amend the complaint that she filed the night before the hearing on the motion for summary judgment.  The trial court noted that although the new evidence purportedly justifying the proposed amendment had been obtained more than three weeks earlier, Hughes offered no explanation for the delay in bringing her motion.  The court ruled Farmers and Hartnett would be "substantially prejudiced" if Hughes were granted leave to amend.

" 'A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding.' " (*Ventura Coastal, LLC v. Occupational Safety and Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 32; see Code Civ. Proc., § 473, subd. (a)(1).) "But this policy applies ' "only '[w]here no prejudice is shown to the adverse party.' " ' " (*Melican v. Regents of Univ. of California* (2007) 151 Cal.App.4th 168, 175.)  In addition, " 'a long deferred

_____

*Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1048 [joint venture theory may not be pursued where "complaint contained no allegations that would have supported a joint venture theory of liability" "or in any way suggested that was asserted as a basis for . . . liability"]; *Unruh–Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 370 [discussing requirement to plead in complaint the elements of joint venture, i.e., that the members have joint control over the venture, share the profits of the undertaking, and each have an ownership interest in the enterprise].)  Hughes may thus not rely on this theory to defeat summary judgment. (See *Government Employees Ins. Co. v. Superior Court, supra,* 79 Cal.App.4th at p. 98, fn. 4.)

presentation of the proposed amendment without a showing of excuse for the delay' " may provide " 'a valid reason for denial.' " (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613.)

In her two-sentence argument on appeal, Hughes has not met her burden to demonstrate the court abused its discretion in denying her leave to amend the complaint.  (See *Leader v. Health Industries of America, Inc.*, *supra*, 89 Cal.App.4th at p. 612 [denial of leave to amend reviewed for abuse of discretion].)  Hughes failed to offer any excuse for the delay, in the trial court or on appeal.  (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732 [no abuse of discretion in denying leave to amend where plaintiff failed to offer any explanation for delay in seeking leave until three days before summary judgment hearing].)  Further, "[it]t would be patently unfair to allow [Hughes] to defeat [the] summary judgment motion by allowing [her] to present a 'moving target' unbounded by the pleadings." (*Melican v. Regents of University of California*, *supra*, 151 Cal.App.4th at p. 176.)

## DISPOSITION

The judgment is affirmed.  Farmers is entitled to recover its costs on appeal.


STONE, J.

We concur:


MARTINEZ, P. J.                              SEGAL, J.


20

Filed 12/3/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ERIN HUGHES, | B331083 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21TRCV00431) |
| v. | |
| FARMERS INSURANCE EXCHANGE, | **ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN APPELLATE JUDGMENT** |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on November 8, 2024 and not certified for publication be modified as follows:

The words "Not to be Published in the Official Reports" appearing on page 1 of said opinion are deleted.

On page 17, second to the last sentence in the first paragraph, insert a "t" in the word "Harnett" so it reads "Hartnett."

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), and ORDERED that the opinion be published in the Official Reports.

There is no change in the appellate judgment.

_____

MARTINEZ, P. J.            SEGAL, J.            STONE, J.